UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

SAMUEL J. SMOLEN,

                              Plaintiff,

              v.

C.O. M. WESLEY, *et al.*,

                              Defendants.

No. 16-CV-2417 (KMK)

<u>OPINION & ORDER</u>

<u>Appearances</u>:

Samuel J. Smolen, Jr.
Fallsburg, NY
*Pro Se Plaintiff*

Julinda A. Dawkins, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

        Samuel J. Smolen, Jr. ("Plaintiff"), currently incarcerated at Sing Sing Correctional

Facility ("Sing Sing"), brings this pro se Action, pursuant to 42 U.S.C. § 1983 and state law,

against numerous officials at Green Haven Correctional Facility (collectively, "Defendants").[1]

---

        [1] Defendants are: C.O. M. Wesley ("Wesley"), C.O. W. Stevens ("Stevens"), C.O. C.
Lampon ("Lampon"), C.O. N. Dapcevic ("Dapcevic"), C.O. R. Arnold ("Arnold"), RN A.
Salmela ("Nurse Salmela"), C.O. D. Huttel ("Huttel"), C.O. M. Veninero ("Veninero"), Sgt.
Duane A. Malark ("Malark"), Sgt. Kevin O'Connor ("O'Connor"), C.O. Darrick G. Pollic
("Pollic"), Mr. Scharfenberg ("Scharfenberg"), Ms. Dunn ("Dunn"), C.O. Mark J. Walker
("Walker"), C.O. Juan A Velazquez ("Velazquez"), C.O. R. Snedeker ("Snedeker"), C.O.
Michael J. Connelly ("Connelly"), RN Adrian Bowden ("Nurse Bowden"), C.O. Robert Pressley
("Pressley"), Sgt. Ronald G. Cabral ("Cabral"), Sgt. William Lee ("Lee"), D.S.S. Edward
Burnett ("Burnett"), Asst. Investigator Thomas Todd ("Todd"), Asst. Investigator Mark J. Miller

Plaintiff alleges that Defendants violated his constitutional rights. (*See generally* Am. Compl. (Dkt. No. 73).) Before the Court is a Partial Motion to Dismiss (the "Motion") submitted by Wesley, Stevens, Lampon, Dapcevic, Arnold, Nurse Salmela, Huttel, Veninero, Malark, O'Connor, Pollic, Levine, Lee, Walker, Snedeker, Nurse Bowden, Cabral, Burnett, Todd, Miller, Holland, Prack, Gaglioti, Velazquez, Colton, Stanaway, and Forman (collectively "Moving Defendants"), pursuant to Federal Rule of Civil Procedure 12(b)(6). (*See* Not. of Mot.; Defs.' Mem. of Law in Supp. of Mot. ("Defs.' Mem.") (Dkt. Nos. 93, 94).)[2, 3] For the following reasons, the Motion is granted.

## I. Background

### A. Factual Background

The following facts are drawn from Plaintiff's Amended Complaint and are taken as true for the purpose of resolving the instant Motion.

Plaintiff alleges that, while incarcerated at Green Haven Correctional Facility ("Green Haven"), he was assaulted by several correction officers on March 30 and March 31, 2013. (Am.

---

("Miller"), Asst. Investigator Douglas Holland ("Holland"), Bruce Levine ("Levine"), Director Albert Prack ("Prack"), Mary C. Gaglioti ("Gaglioti"), Sgt. Bruce F. Forman ("Forman"), Empire State Ambulance ("Empire State"), C.O. Donald J. Hobson ("Hobson"), Ms. Laura Stanaway ("Stanaway"), and Sgt. Daniel Colton ("Colton").

[2] The Court notes that Hobson has thus far not been properly served. (*See* Dkt. No. 81.) Further, counsel for Moving Defendants does not move for dismissal of Plaintiff's Eighth Amendment excessive use of force claims against Wesley, Stevens, Lampon, Connelly, Pressley, Pollic, Hobson, and Cabral. (*See* Defs.' Mem. 1 n.2.)

[3] Moving Defendants' counsel notes that they also represent Connelly and Pressley and that they filed an Answer on their behalf on July 17, 2018. (Defs.' Mem. 1 n.1.) Counsel does not represent Hobson, Scharfenberg, or Dunn. (*Id.*)

Compl. 10.)[4]  Subsequent to the assault, Plaintiff was allegedly denied medical treatment and became the subject of a false misbehavior report and subsequent disciplinary hearing in which he was allegedly denied due process.  (*Id.* at 10, 17.)

### 1.  First Assault

Plaintiff alleges that, on March 30, 2013, at around 1:00 p.m., Wesley pushed Plaintiff into a "wooden mail box attached to the bars of the officer's station" when Plaintiff was attempting to "retrieve [his] kosher food tray."  (*Id.* at 10.)  The corner of the wooden mailbox allegedly "ripped into [Plaintiff's] upper right bicep" which "[tore] out tissue, etc."  (*Id.*)  Wesley then allegedly knocked Plaintiff on to the floor, and Lampon reached through the bars to punch Plaintiff "several times about the rear and sides of [Plaintiff's] head" while Plaintiff was on the floor.  (*Id.*)  Stevens also allegedly punched and kicked Plaintiff "about the head and body." (*Id.*)  Wesley allegedly sat on top of Plaintiff as Plaintiff "laid on [his] back" on the floor and continued punching Plaintiff "about the head, ears, and body."  (*Id.*)  When Plaintiff attempted to defend himself, Wesley allegedly grabbed Plaintiff's right hand and "twisted [his] right ring finger until" it broke and continued punching Plaintiff until other officers arrived.  (*Id.*)  Plaintiff also alleges that Wesley, Stevens, and Lampon "denied [Plaintiff] medical treatment."  (*Id.*)

Plaintiff further alleges that, after the assault, Dapcevic and Arnold handcuffed Plaintiff with "excessive force," "causing pain to [Plaintiff's] injuries sustained in [the] assault."  (*Id.* at 11.)

---

[4] Citations to the Amended Complaint refer to the ECF-stamped page numbers at the top right corner of the page.

## 2. Medical Care

Following the assault, Dapcevic and Arnold allegedly did not provide Plaintiff with "prompt medical treatment." (*Id*.) Plaintiff also alleges that Malark, Huttel, Veninero, O'Connor, and Forman all knew that Plaintiff was laying "face down in A-Block" in "severe pain and all failed to provide [Plaintiff] with prompt medical treatment." (*Id*.)

Subsequently, it appears that Plaintiff was given medical care of some sort. However, Plaintiff alleges that Colton "failed to insure . . . prompt and proper medical treatment" and instead "stood by and allowed" Nurse Salmela to "under-report" Plaintiff's injuries. (*Id*.) Plaintiff alleges that Nurse Salmela "deliberately and intentionally . . . failed to provide [Plaintiff] with prompt and proper medical treatment and failed to [send Plaintiff] to the facility's emergency room" or to an outside hospital for medical treatment. (*Id*.)

Plaintiff then claims he had a seizure. (*Id*. at 12.) At this point, Walker and Velazquez, while attempting to transport Plaintiff from his cell to a stretcher, allegedly "bang[ed Plaintiff's] right arm against the steel bars, pushing [Plaintiff's] bone in [his] right elbow out of alignment." (*Id.*) Plaintiff alleges that this occurred because Walker and Velazquez were not paying attention to where they were going. (*Id*.) Plaintiff also alleges that Colton was negligent in supervising Plaintiff's transport to the facility's emergency room. (*Id.*)

Plaintiff then claims that, "upon [his] arrival in the facility's emergency room," Nurse Salmela, Darrick, Pollic, and Snedeker all filed or conspired to file a false misbehavior report against Plaintiff accusing him of spitting in Nurse Salmela's face while Plaintiff was lying on the gurney. (*Id*.) Plaintiff claims this would not have been possible because he was "wearing a neck brace" and "in a semi-conscious state." (*Id*.) Plaintiff claims he was also "denied medical treatment" for his "injuries, including [his] seizure" by Nurse Salmela. (*Id*.) Plaintiff also

alleges that all who were present (apparently, Nurse Salmela, Darrick, Pollic, Snedeker, Colton, Scharfenberg, and Dunn) denied Plaintiff the use of a urinal, which caused Plaintiff to urinate in his clothes and on the gurney. (*Id*. at 12–13.) Scharfenberg then allegedly turned to Darrick, Pollic, Snedeker, and Colton and informed them that he "would turn around out of view and not witness [them] physically assault [Plaintiff] if they had a desire to do so." (*Id*. at 13.) Plaintiff also alleges that Scharfenberg and Dunn denied him medical treatment and the use of a urinal when Plaintiff was eventually transported to an outside hospital, "claiming they didn't have one in the ambulance." (*Id*.) Plaintiff once again alleges he urinated on his clothes and the gurney. (*Id*.) During transport to the outside hospital, Plaintiff also alleges that Colton and Hobson provided Plaintiff with a size twelve pair of boots even though he wears a size seven. (*Id*. at 13–14.) Plaintiff also alleges that Pollic and Hobson warned Plaintiff that he would be "assaulted again" once he returned to Green Haven. (*Id*. at 14.)

### 3. Second Assault

While Plaintiff was in an "isolation room in the facility's infirmary," early on the morning of March 31, 2013, Connelly, Pressley, Pollic, and Hobson allegedly assaulted Plaintiff. (*Id*.) They allegedly "took turns punching [Plaintiff] with closed fists numerous times about [Plaintiff's] head, ears, and body." (*Id*.) Plaintiff alleges that Cabral "watched from outside . . . through a large clear window" and "did nothing to stop" the officers who were allegedly assaulting Plaintiff. (*Id.* at 14–15.) Plaintiff allegedly asked Cabral for help and medical treatment but was apparently ignored. (*Id*. at 15.) Plaintiff also alleges that he pressed the medical call button "numerous times," but Nurse Bowden, a nurse at the facility, ignored his calls. (*Id*.) As a result, Plaintiff "bled from both ears" and experienced "a severe headache and pain all over [his] body." (*Id*.)

### 4.  Failures to Investigate

Plaintiff alleges that, prior to these assaults, he had notified Lee, the Superintendent, and Burnett, a Deputy Superintendent, that officers were "making threats to harm" Plaintiff.  (*Id*. at 15.)  Plaintiff alleges that they ignored his letters and "took no action[] to protect" Plaintiff.  (*Id*.)

Plaintiff also alleges that Todd and Miller both ignored an email sent by Plaintiff's friend on March 22, 2013, which stated that Plaintiff had received "serious threats" from Green Haven staff.  (*Id*. at 16.)  Miller allegedly responded to the email, indicating that he would put the friend's complaint in for "processing" but "failed to take immediate action to protect" Plaintiff.  (*Id*.)

Plaintiff further alleges that, after the assaults described above, Holland "failed to conduct a thorough investigation into [Plaintiff's] allegations" regarding the assaults.  (*Id*.)

### 5.  Disciplinary Hearing

 Following the assaults, Plaintiff was subjected to a disciplinary hearing regarding the misbehavior report charging Plaintiff with spitting in Nurse Salmela's face following his alleged seizure.  (*Id*. at 12, 17.)  Plaintiff alleges that Holland's failure to investigate the underlying assaults deprived Plaintiff of due process and equal protection.  (*Id*. at 16.)  Plaintiff also alleges that Levine, the hearing officer presiding over his disciplinary hearing, denied Plaintiff "witnesses, medical reports, photos of injuries, a responsible tier assistant, . . . documentary evidence, . . . [and] access to a [] taped interview with one of [Plaintiff's] requested witnesses." (*Id*. at 17.)  Plaintiff alleges there were "violation[s] of departmental policies and procedures," such as having a correction officer approach inmate witnesses regarding their willingness to testify instead of Plaintiff's assistant.  (*Id.*)  Levine's subsequent "statement of evidence" was,

according to Plaintiff, "indecipherable," and Levine was generally allegedly "not an impartial hearing officer." (*Id*.)

Plaintiff also alleges that his assistant, Gaglioti, did not provide him with adequate assistance for the hearing because she failed to "interview [Plaintiff's] requested witnesses, obtain crucial evidentiary documents[,] collect . . . witness[] refusal to testify forms[,] [and] . . . to obtain names and title[s] of all witnesses that were present in the facility's emergency room" on March 30, 2013. (*Id*.) Plaintiff also alleges that Prack, Director of Special Housing for the New York Department of Correction and Community Supervision ("DOCCS"), "failed to conduct a thorough and impartial review" of Plaintiff's disciplinary hearing on appeal. (*Id*. at 18–19.)

Finally, Plaintiff alleges that Stanaway, a Freedom of Information Law ("FOIL") Officer at Green Haven, repeatedly ignored or denied Plaintiff's FOIL requests that Plaintiff filed at Green Haven from October 2012 to August 2013. (*Id*. at 19.) Stanaway also allegedly refused or ignored Plaintiff's requests to hear the tapes from two of Plaintiff's disciplinary hearings. (*Id*.)

B. Procedural History

Plaintiff filed his Complaint and application to proceed in forma pauperis ("IFP") on March 31, 2016. (Dkt. Nos. 1, 2.) The Court granted IFP status on April 4, 2016. (Dkt. No. 4.) Plaintiff filed the operative Amended Complaint, naming additional defendants, on February 22, 2018. (Dkt. No. 73.) Moving Defendants filed their Motion on September 7, 2018. (Not. of Mot.; Defs.' Mem.) Subsequently, Plaintiff asked for an extension of time to respond on October 12, 2018, and the Court granted Plaintiff 30 additional days to respond on October 18, 2018. (Dkt. Nos. 95, 96.) By December 14, 2018, Plaintiff still had not responded to the

Motion, and the Court considered the Motion fully submitted on December 17, 2018.  (Dkt. Nos. 97, 98.)

## II.  Discussion

### A.  Standard of Review

The Supreme Court has held that, while a complaint "does not need detailed factual allegations" to survive a motion to dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations, quotation marks, and alterations omitted).  Indeed, Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Nor does a complaint suffice if it tenders naked assertions devoid of further factual enhancement."  *Id.* (quotation marks and alteration omitted). Rather, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Although "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint," *id.* at 563, and a plaintiff need allege "only enough facts to state a claim to relief that is plausible on its face," *id.* at 570, if a plaintiff has not "nudged [his or her] claim[] across the line from conceivable to plausible, the[] complaint must be dismissed," *id.*; *see also Iqbal*, 556 U.S. at 679 ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" (citation omitted) (second alteration in original) (quoting Fed. R.

Civ. P. 8(a)(2))); *id.* at 678–79 ("Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

In considering a motion to dismiss, the Court "must accept as true all of the factual allegations contained in the complaint." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *see also Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014) ("In addressing the sufficiency of a complaint we accept as true all factual allegations . . . . " (quotation marks omitted)). Further, "[f]or the purpose of resolving [a] motion to dismiss, the Court . . . draw[s] all reasonable inferences in favor of the plaintiff." *Daniel v. T & M Prot. Res., Inc.*, 992 F. Supp. 2d 302, 304 n.1 (S.D.N.Y. 2014) (citing *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012)). Where, as here, a plaintiff proceeds pro se, the "complaint[] must be construed liberally and interpreted to raise the strongest arguments that [it] suggest[s]." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (per curiam) (quotation marks omitted). However, "the liberal treatment afforded to pro se litigants does not exempt a pro se party from compliance with relevant rules of procedural and substantive law." *Bell v. Jendell*, 980 F. Supp. 2d 555, 559 (S.D.N.Y. 2013) (quotation marks omitted); *see also Caidor v. Onondaga County*, 517 F.3d 601, 605 (2d Cir. 2008) ("[P]ro se litigants generally are required to inform themselves regarding procedural rules and to comply with them." (italics and quotation marks omitted)).

Generally, "[i]n adjudicating a Rule 12(b)(6) motion, a district court must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999) (quotation marks and citation omitted). When a plaintiff proceeds pro se, however, the Court

may consider "materials outside the complaint to the extent that they are consistent with the allegations in the complaint." *Alsaifullah v. Furco*, No. 12-CV-2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013) (quotation marks omitted).

B. Analysis

Plaintiff refers to the Eighth Amendment, Equal Protection Clause, Due Process Clause, "freedom of speech," and negligence throughout his Amended Complaint. (*See generally* Am. Compl.) The Court liberally reads the Amended Complaint to assert Eighth Amendment claims of excessive force, deliberate medical indifference, failure to protect, and inadequate conditions of confinement; a Fourteenth Amendment claim of violations of procedural due process; a First Amendment claim of retaliation; and state law claims of negligence or recklessness.

Moving Defendants principally argue that Plaintiff fails to state a deliberate medical indifference claim as to Wesley, Stevens, Lampon, Dapcevic, Arnold, Nurse Salmela, Huttel, Veninero, Malark, O'Connor, Nurse Bowden, Cabral, Colton, and Forman, (Defs.' Mem. 6), fails to state an excessive force claim as to Dapcevic and Arnold, (*id*. at 11), fails to state any due process claim, (*id*. at 12), fails to plausibly allege the personal involvement of Lee, Burnett, Holland, and Prack, (*id*. at 17), fails to state a retaliation claim, (*id*. at 22), and fails to state an equal protection claim, (*id*. at 23). Moving Defendants also argue that they are entitled to qualified immunity, (*id*. at 24), and that the state law claims should be dismissed for lack of subject matter jurisdiction, (*id*.). The Court will address these arguments to the extent necessary.

1. Personal Involvement

"It is well settled that, in order to establish a defendant's individual liability in a suit brought under § 1983, a plaintiff must show . . . the defendant's personal involvement in the

alleged constitutional deprivation." *Grullon v. City of New Haven*, 720 F.3d 133, 138 (2d Cir.

2013). To establish personal involvement, a plaintiff must show that:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Id.* at 139 (italics and quotation marks omitted) (citing *Colon v. Coughlin*, 58 F.3d 865, 873 (2d

Cir. 1995)). In other words, "[b]ecause vicarious liability is inapplicable to . . . § 1983 suits, a

plaintiff must plead that each Government-official defendant, through the official's own

individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Therefore, Plaintiff

must plausibly allege that Defendants' actions fall into one of the five categories identified

above. *See Lebron v. Mrzyglod*, No. 14-CV-10290, 2017 WL 365493, at *4 (S.D.N.Y. Jan. 24,

2017) (holding that the five categories "still control[] with respect to claims that do not require a

showing of discriminatory intent" post-*Iqbal*).

Moving Defendants argue that Plaintiff fails to plausibly allege the personal involvement

of Lee, Burnett, Holland, and Prack. (Defs.' Mem. 17.)

### a. Lee and Burnett

Plaintiff's only allegation as to Lee and Burnett is that they were given "constructive

notice" through Plaintiff's "several letters" that "officers were making threats to harm

[Plaintiff]." (Am. Compl. 15.) Plaintiff offers no details as to the content of the threats or the

letters sent to Lee and Burnett. Moreover, even drawing all inferences in favor of Plaintiff,

"mere knowledge and acquiescence [of a constitutional violation] cannot establish personal

involvement." *Faulk v. N.Y.C Dep't of Corrs.*, No. 08-CV-1668, 2014 WL 239708, at *10

(S.D.N.Y. Jan. 21, 2014) (citation and quotation marks omitted). Failure to investigate claims or incidents also does not sufficiently allege personal involvement in a constitutional violation. *See Hamilton v. Fischer*, 12-CV-6449, 2013 WL 3784153, at *6 (W.D.N.Y. July 18, 2013) (plaintiff failed to plausibly allege personal involvement against defendants who merely "failed to investigate [an] incident" of officer misconduct). "Without more, [Plaintiff's] allegations prove only the scantest awareness of [the alleged threats]." *Mateo v. Fischer*, 682 F. Supp. 2d 423, 427, 431 (S.D.N.Y. 2010) (noting that, in a situation where the plaintiff complained of "harassment, retaliation[,] and threats by correction officers" with no specific details, "the receipt of letters . . . by itself[] does not amount to personal involvement" (collecting cases)).

Accordingly, any claims against Lee and Burnett are dismissed.[5]

### b. Prack

Plaintiff's only allegations regarding Prack are that he "failed to conduct a thorough and impartial review" of Plaintiff's disciplinary hearing. (Am. Compl. 18–19.) Even assuming arguendo that Plaintiff has plausibly alleged violations of procedural due process at his disciplinary hearing, Plaintiff's claim against Prack is nevertheless dismissed.

As discussed at length in *Colon v. Annucci*, 344 F. Supp. 3d 612 (S.D.N.Y. 2018), "[i]t is an open question in the Second Circuit whether an appeal officer may be held liable for failing to reverse the outcome of an allegedly unconstitutional disciplinary hearing." *Id.* at 630–31 (citation and quotations omitted). Consistent with *Colon*, the Court concludes that Prack is entitled to qualified immunity here because this area of law is "unsettled," and it is not clear that

---

[5] To the extent that Plaintiff also intended to allege a claim of failure to protect against Lee and Burnett, the Amended Complaint contains no factual allegations that support the elements of such a claim, which are discussed below in Section II.B.4.

"every reasonable official" would have known that affirming the findings of an allegedly procedurally defective hearing violates an inmate's constitutional rights. *Id.* at 631–32.

Accordingly, any claims against Prack are dismissed.

### c. Holland

As to Holland, Plaintiff alleges that, after the alleged assaults, Holland "failed to conduct a thorough investigation into [Plaintiff's] allegations." (Am. Compl. 16.) This fails to plausibly allege personal involvement. "There is no constitutional right to an investigation or arrest of an individual who has committed an assault upon a prisoner unless the omission or inadequacy of the investigation itself resulted in a deprivation of a constitutional right." *Malloy v. City of New York*, No. 93-CV-8919, 1996 WL 648927, at *2 (S.D.N.Y. Nov. 7, 1996) (citations omitted) (holding personal involvement not established where the plaintiff "merely allege[d] that [defendant] failed to investigate [an] assault" by correction officers); *see also Williams v. Ramos*, No. 14-CV-2062, 2016 WL 11395011, at *3 (E.D.N.Y. Feb. 8, 2016) (holding personal involvement not established where the plaintiff alleged only that the defendant failed to investigate an assault by correction officers); *Burton v. Lynch*, 664 F. Supp. 2d 349, 362–63 (S.D.N.Y. 2009) (holding personal involvement not established where the plaintiff alleged only that the defendant ignored a request to have a member of prison medical staff investigated for assault).

Accordingly, any claims against Holland are dismissed.

### 2. Deliberate Medical Indifference Claims

"The Eighth Amendment forbids 'deliberate indifference to serious medical needs of prisoners.'" *Spavone v. N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013) (quoting *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). An inmate's claim of deliberate

indifference to his medical needs by those overseeing his care is analyzed under the Eighth Amendment because it is an allegation that "conditions of confinement [are] a form of punishment" and thus is a "violation of [the] Eighth Amendment right to be free from cruel and unusual punishments." *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017). To state a deliberate indifference claim, an inmate must plausibly allege (1) "that he suffered a sufficiently serious constitutional deprivation," and (2) that the defendants "acted with deliberate indifference." *Feliciano v. Anderson*, No. 15-CV-4106, 2017 WL 1189747, at *8 (S.D.N.Y. Mar. 30, 2017).

The first element is "objective" and requires that the plaintiff show that the "alleged deprivation of adequate medical care [is] sufficiently serious." *Spavone*, 719 F.3d at 138 (citation and quotation marks omitted). In other words, the plaintiff "must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013) (citation omitted). Analyzing this objective requirement involves two inquiries: "whether the prisoner was actually deprived of adequate medical care," and "whether the inadequacy in medical care is sufficiently serious," which in turn "requires the court to examine how the offending conduct is inadequate and what harm, if any, the inadequacy has caused or will likely cause the prisoner." *Salahuddin v. Goord*, 467 F.3d 263, 279–80 (2d Cir. 2006) (citations omitted). "There is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). Nevertheless, the Second Circuit has offered the following non-exhaustive list of factors to consider when evaluating an inmate's medical condition: "(1) whether a reasonable doctor or patient would perceive the medical need in question as important and worthy of comment or treatment, (2) whether the medical condition

significantly affects daily activities, and (3) the existence of chronic and substantial pain." *Id.* (citation and quotation marks omitted).

The second element, which goes to mental state, requires the plaintiff show that prison officials were "subjectively reckless in their denial of medical care." *Spavone*, 719 F.3d at 138 (citation omitted). This means that the official must have "appreciate[d] the risk to which a prisoner was subjected," and have had a "subjective awareness of the harmfulness associated with those conditions." *Darnell*, 849 F.3d at 35; *see also Nielsen*, 746 F.3d at 63 ("Deliberate indifference is a mental state equivalent to subjective recklessness," and "requires that the charged official act or fail to act while actually aware of a substantial risk that serious inmate harm will result." (citation and quotation marks omitted)). In other words, "[i]n medical-treatment cases not arising from emergency situations, the official's state of mind need not reach the level of knowing and purposeful infliction of harm; it suffices if the plaintiff proves that the official acted with deliberate indifference to inmate health." *Salahuddin*, 467 F.3d at 280 (citation and quotation marks omitted). An official's awareness of the risk of serious harm can be established through "inference from circumstantial evidence," including "from the very fact that the risk was obvious." *Farmer v. Brennan*, 511 U.S. 825, 842 (1994). However, "mere negligence" is insufficient to state a claim for deliberate indifference. *Walker*, 717 F.3d at 125 (quoting *Farmer*, 511 U.S. at 835). Neither does "mere disagreement over the proper treatment . . . create a constitutional claim"; "[s]o long as the treatment given is adequate, the fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment violation." *Chance v. Armstrong*, 143 F.3d 698, 703 (2d Cir. 1998).

Here, as a result of the two alleged assaults, Plaintiff complains of a wound in his upper right bicep "tearing out tissue" from when Wesley allegedly pushed him into a wooden mailbox,

(Am. Compl. at 10), a broken right finger from the subsequent assault allegedly committed by Wesley, Stevens, and Lampon, (*id*.), and general pain following the assault, (*id*. at 11.) Plaintiff alleges that Dapcevic and Arnold exacerbated his pain by "twisting" Plaintiff's arm after the assault. (*Id*.) He also alleges that he experiences "nightmares" and has "a damaged right elbow." (*Id*. at 10.)

Plaintiff also alleges that Defendants Wesley, Stevens, Lampon, Dapcevic, Arnold, Nurse Salmela, Huttel, Veninero, Malark, O'Connor, Colton, and Forman all treated Plaintiff with deliberate medical indifference in connection to the first assault. (Am. Compl. 10–13.) Plaintiff further alleges that Cabral denied Plaintiff medical treatment during and following the second assault and that Nurse Bowden ignored Plaintiff pressing the "medical call button" during the second assault. (*Id*. at 15.) The Court agrees with the Moving Defendants that these claims should be dismissed.

Taken as a whole, Plaintiff's allegations do not plausibly allege an Eighth Amendment deliberate indifference claim as to any of the Defendants. None of Plaintiff's injuries from the alleged assaults rose to the level—even if true—of "an unreasonable risk of serious damage to [Plaintiff's] health." *Walker*, 717 F.3d 119, 125. A broken finger or a cut where skin is "ripped off" does not pose a "substantial risk of serious harm" because it "does not produce death, degeneration, or extreme pain." *Sonds v. St. Barnabas Hosp. Corr. Health Servs.*, 151 F. Supp. 2d 303, 311 (S.D.N.Y. 2001); *see also Henderson v. Doe*, No. 98-CV-5011, 1999 WL 378333, at *2 (S.D.N.Y. June 10, 1999) (holding that a broken finger is not sufficiently serious to plausibly allege a claim of deliberate medical indifference). Failing to meet this first objective prong alone dooms Plaintiff's claim.

Even if Plaintiff's injuries were sufficiently serious, nothing in the Amended Complaint plausibly alleges that the relevant Defendants' actions rose to the level of "subjective reckless[ness]" regarding care following the first assault or Nurse Bowden ignoring Plaintiff's medical call button.[6] *Spavone*, 719 F.3d at 138. Plaintiff has only alleged that Nurse Salmela "underreported [his] injuries," failing to send Plaintiff to the "facility's emergency room and or outside hospital for medical treatment," (Am. Compl. 11), and that other related Defendants were aware of his pain and failed to correct Nurse Salmela's apparent under treatment, (*id*.). However, "Plaintiff's disagreement with the manner in which his condition was treated and his belief that he should have received more or different treatment is not, without more, sufficient to state a constitutional claim." *Lopez v. Phipps*, No. 18-CV-3605, 2019 WL 2504097, at *9 (E.D.N.Y. June 17, 2019) (citing *McIntosh v. City of New York*, 722 F. App'x 42, 46 (2d Cir. 2018)). Plaintiff even concedes that he later was taken to an "outside hospital" the same day as the incident, (Am. Compl. 12), further undermining any claim that he received constitutionally deficient medical treatment. *See Walton v. Lee*, No. 15-CV-3080, 2019 WL 1437912, at *5 (S.D.N.Y. Mar. 29, 2019) (holding that treatment of injuries the same day that the plaintiff was "struck with [a] chair" did not plausibly allege a deliberate medical indifference claim) (collecting cases).

As to Nurse Bowden, Plaintiff does not even allege that Nurse Bowden was aware of the second assault or the general circumstances surrounding his use of the medical call button.

---

[6] Moving Defendants argue, without citing to case law, that Plaintiff's claim for deliberate medical indifference as to Cabral during the second assault, should be dismissed because Cabral "is not medical personnel." (Defs.' Mem. 9.) The Court does not consider this argument at this time and dismisses Plaintiff's deliberate medical indifference claim against Cabral solely on the objective prong of the medical care analysis.

Without alleging such awareness, Plaintiff has a fortiori not alleged "subjective reckless[ness]" in failing to treat any medical injuries. *Spavone*, 719 F.3d at 138.

Further, with regard to Colton and Pollic, Plaintiff alleges that, during transport to the outside hospital, they provided him with a size twelve boot when he wears a size seven. (Am. Compl. 13–14.) Plaintiff does not allege that he experienced any physical pain or discomfort from this experience, but even if he did, this does not state a cognizable claim for deliberate medical indifference. *See Stevens v. City of New York*, No. 12-CV-3808, 2013 WL 81327, at *3 (S.D.N.Y. Jan. 8, 2013) ("[C]ourts in this Circuit have consistently found that pain and other problems resulting from being forced to wear institutional footwear are not sufficiently serious." (citing cases)); *Hallett v. City of New York*, No. 08-CV-2831, 2010 WL 1379733, at *6–7 (S.D.N.Y. Mar. 26, 2010) (noting that providing the plaintiff with incorrect size shoe does not constitute deliberate indifference to plaintiff's health).

Accordingly, Plaintiffs claims for deliberate medical indifference are dismissed without prejudice.

### 3.  Excessive Force Claims

The Eighth Amendment guarantees freedom from "cruel and unusual punishment." U.S. Const. amend. VIII; *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994) ("[T]he Eighth Amendment places restraints on prison officials, who may not, for example, use excessive physical force against prisoners." (citation omitted)); *Zimmerman v. Seyfert*, No. 03-CV-1389, 2007 WL 2080517, at *23 (N.D.N.Y. July 19, 2007) ("Under the Eighth Amendment, an inmate has the right to be free from conditions of confinement that impose an excessive risk to the inmate['s] health or safety." (citing *Farmer*, 511 U.S. at 837)). "Analysis of cruel and unusual punishment claims requires both objective examination of the conduct's effect and a subjective

inquiry into the defendant's motive for the conduct." *Manley v. Grossman*, No. 13-CV-1974, 2017 WL 4326541, at *8 (S.D.N.Y. Sept. 27, 2017) (citing *Wright v. Goord*, 554 F.3d 255, 268 (2d Cir. 2009)); *see also Sims v. Artuz*, 230 F.3d 14, 22 (2d Cir. 2000) ("[A] prisoner who alleges facts from which it could be inferred that prison officials subjected him to excessive force, and did so maliciously and sadistically, states an Eighth Amendment claim on which he is entitled to present evidence.").

The objective element focuses on the harm done in light of "contemporary standards of decency," *Wright*, 554 F.3d at 268 (quoting *Hudson v. McMillian*, 503 U.S. 1, 8 (1992)); *see also Griffin v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999) (noting that the analysis is "context specific, turning upon contemporary standards of decency" (citation and quotation marks omitted)), and asks whether "the deprivation alleged is 'sufficiently serious,' or 'harmful enough,' to reach constitutional dimensions," *Romano v. Howarth*, 998 F.2d 101, 105 (2d Cir. 1993) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "[N]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights." *Jeanty v. County of Orange*, 379 F. Supp. 2d 533, 540 (S.D.N.Y. 2005) (quoting *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997)). However, "when prison officials use force to cause harm maliciously and sadistically, 'contemporary standards of decency always are violated. This is true whether or not significant injury is evident.'" *Wright*, 554 F.3d at 268–69 (alteration omitted) (quoting *Hudson*, 503 U.S. at 9).

The subjective element requires a showing that the defendant "had the necessary level of culpability, shown by actions characterized by 'wantonness' in light of the particular circumstances surrounding the challenged conduct." *Id.* at 268 (quoting *Wilson*, 501 U.S. at 299); *see also Vail v. Fischer*, No. 12-CV-1718, 2013 WL 5406637, at *5 (N.D.N.Y. Sept. 25,

2013) (noting that an inmate must prove, "subjectively, that the defendant acted wantonly and in bad faith"). "This inquiry turns on 'whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.'" *Perry v. Stephens*, 659 F. Supp. 2d 577, 582 (S.D.N.Y. 2009) (quoting *Blyden v. Mancusi*, 186 F.3d 252, 262 (2d Cir. 1999)).

Plaintiff alleges that Dapcevic and Arnold twisted his arms while they handcuffed him following the first assault, causing him pain. (Am. Compl. 11.) However, the Court concludes that Plaintiff fails to allege an excessive force claim as to them. "A use of force that constitutes the tort of battery does not necessarily violate the Eighth Amendment." *Anderson v. Sullivan*, 702 F. Supp. 424, 426 (S.D.N.Y. 1988). Nothing in Plaintiff's allegations suggest that Dapcevic and Arnold acted maliciously when handcuffing Plaintiff following an altercation between Plaintiff and prison personnel. Accordingly, claims of use of excessive force as to them are dismissed. *See id.* (holding that the defendants did not use excessive force when they pushed plaintiff into a bar and put his hands behind his back to handcuff him); *see also Smith v. Fischer*, No. 13-CV-6127, 2016 WL 3004670, at *12–13 (W.D.N.Y. May 23, 2016) (holding that correction officer "grabb[ing] Plaintiff's] arm" during an altercation was a "de minimis" and not an excessive use of force (collecting cases)); *Tavares v. City of New York*, No. 08-CV-3782, 2011 WL 5877550, at *6 (S.D.N.Y. Oct. 17, 2011) (holding that a pat frisk where plaintiff was "forcefully 'compressed' against the wall" was not a violation of the Eighth Amendment and noting that "[c]ourts in this Circuit have routinely found such types of minimal injuries and pain insufficiently serious or harmful to satisfy the objective element of the Eight Amendment analysis" (citing cases)), *adopted by* 2011 WL 5877548 (S.D.N.Y. Nov. 23, 2011); *Headley v. Fischer*, No. 06-CV-6331, 2008 WL 1990771, at *4–5 (S.D.N.Y. May 7, 2008) ("[The

plaintiff's] claims that [the defendant] grabbed his shoulder, cursed in his face, slapped him twice and pushed him in his cell do not constitute 'unnecessary and wanton infliction of pain.' [The plaintiff's] allegations do not demonstrate that [the defendant] acted maliciously and sadistically to cause him harm rather than in a good faith effort to maintain or restore discipline." (citation omitted)). Therefore, this claim is dismissed.

### 4. Failure to Protect Claims

An inmate may state a claim under the Eighth Amendment against a prison official under the theory that prison officials failed to protect him or her. *See Farmer*, 511 U.S. at 847; *see also Hayes v. N.Y.C. Dep't of Corr.*, 84 F.3d 614, 620 (2d Cir. 1996) ("The Eighth Amendment requires prison officials to take reasonable measures to guarantee the safety of inmates in their custody."). "To state a claim for a prison official's failure to protect, a plaintiff must [first] plausibly allege that, objectively, the inmate was "incarcerated under conditions posing a substantial risk of serious harm." *Mirabella v. Corr. Off. O'Keenan*, No. 15-CV-142, 2016 WL 4678980, at *3 (W.D.N.Y. Sept. 7, 2016) (quoting *Farmer*, 511 U.S. at 834). Second, "the subjective second prong requires that the prison official possessed sufficient culpable intent, specifically, 'knowledge that an inmate faces a substantial risk of serious harm and he disregards that risk by failing to take reasonable measures to abate the harm.'" *Id*. (quoting *Hayes v. N.Y.C. Dep't of Corrs.*, 84 F.3d 614, 620 (2d Cir. 1996)).

Plaintiff alleges that Todd and Miller ignored an email sent by Plaintiff's friend on March 22, 2013, which allegedly stated that Plaintiff was "receiving serious threats from staff at Green Haven." (Am. Compl. 16.) The Court interprets this to be a claim for failure to protect against Todd and Miller. Plaintiff's vague and conclusory statement fails to plausibly allege that first, Plaintiff objectively "face[d] a substantial risk of serious harm" and second, that Todd and Miller

"subsequently disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847. The Amended Complaint does not specify what the email said or what the nature of the threat was. "Because [] [P]laintiff has alleged no facts suggesting that [Todd and Miller] knew of a particular risk to [Plaintiff's] safety, [Plaintiff] has failed to state a claim that [Todd and Miller were] deliberately indifferent in failing to protect him from the [] attack." *Parris v. N.Y. Dep't of Corr. Servs.*, 947 F. Supp. 2d 354, 363–64 (S.D.N.Y. 2013) (citation omitted) (noting that alleging "mere negligence [as opposed to deliberate indifference] is insufficient" to state a failure to protect claim (citing *Hayes*, 84 F.3d at 620)); *see also Calvin v. Fischer*, No. 12-CV-1846, 2015 WL 13744631, at *5 (N.D.N.Y. Dec. 2, 2015) ("The [emails] are simply not specific enough to attribute actual knowledge of an impending [] assault to [Todd or Miller]." (collecting cases)), *adopted by* 2016 WL 830740 (N.D.N.Y. Mar. 3, 2016); *cf. Lebron*, 2017 WL 365493, at *7 (refusing to dismiss a failure to protect claim where the plaintiff alleged that the defendant was aware of a "specific threat" from a specific individual and not merely "a generalized safety concern").

### 5. Conditions of Confinement Claim

As part of the Eighth Amendment prohibition on "cruel and unusual punishments," U.S. Const. amend. VIII, inmates have the right to conditions of confinement that do not "involve the wanton and unnecessary infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). However, inmates do not have a right to "comfortable" prison conditions. *Id.* at 349. "To state an Eighth Amendment claim based on conditions of confinement, an inmate must allege that: (1) objectively, the deprivation the inmate suffered was sufficiently serious that he was denied the minimal civilized measure of life's necessities, and (2) subjectively, the defendant official acted with a sufficiently culpable state of mind, such as deliberate indifference to inmate health or

safety." *Walker*, 717 F.3d at 125 (alterations and quotation marks omitted). "To meet the objective element, the inmate must show that the conditions, either alone or in combination, pose an unreasonable risk of serious damage to his health." *Id.; see also Seymore v. Dep't of Corr. Servs.,* No. 11-CV-2254, 2014 WL 641428, at *3 (S.D.N.Y. Feb. 18, 2014) ("[T]he Second Circuit . . . has explained that '[b]ecause society does not expect or intend prison conditions to be comfortable, only extreme deprivations are sufficient to sustain a 'conditions-of-confinement claim.'" (alteration in original) (quoting *Blyden*, 186 F.3d at 263)). To meet the subjective element, a plaintiff must show that the defendant "acted with more than mere negligence," and instead knew of and disregarded an "excessive risk to inmate health or safety." *Walker,* 717 F.3d at 125 (quotation marks omitted). Under the Eighth Amendment, officials may not "create inhumane prison conditions, deprive inmates of basic necessities, or fail to protect their health or safety." *Overton v. Bazzetta,* 539 U.S. 126, 137 (2003).

Plaintiff alleges that while he was being transported to an external medical facility on March 30, 2013, he was denied the use of a urinal by Colton, Snedeker, Nurse Salmela, and Pollic. (Am. Compl. 12–14.) Even if true, this fails to state a claim for a violation of Plaintiff's constitutional rights. "The temporary deprivation of the right to use the toilet, in the absence of serious physical harm or a serious risk of contamination, does not rise to the level of an objective constitutional violation." *Mateo v. Alexander*, No. 10-CV-8427, 2012 WL 864805, at *5 (S.D.N.Y. Mar. 14, 2012) (citation omitted); *see also May v. DeJesus*, No. 06-CV-1888, 2010 WL 1286800, at *5 (D. Conn. Mar. 30, 2010) ("Courts in this and other circuits have consistently held that an occasional or temporary deprivation of toilet use, does not constitute an extreme deprivation of a basic human need or necessity of life." (collecting cases)); *Whitted v. Lazerson*, No. 96-CV-2746, 1998 WL 259929, at *2 (S.D.N.Y. May 21, 1998) (holding that

refusing the plaintiff the use of the bathroom, which resulted in the plaintiff urinating in his pants, was not a constitutional violation); *cf. Hart v. City of New York*, No. 11-CV-4678, 2013 WL 6139648, at *9 (S.D.N.Y. Nov. 18, 2013) (holding that the plaintiff plausibly alleged a constitutional violation because plaintiff "specifically informed [the defendant] that he had MS, which causes frequent urination, and [] he was nonetheless denied his repeated requests to use the bathroom.").

Accordingly, claims related to denying Plaintiff the use of the urinal are dismissed without prejudice.

### 6. Procedural Due Process Claims

"To present a due process claim, a plaintiff must establish (1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process." *Ortiz v. McBride*, 380 F.3d 649, 654 (2d Cir. 2004) (alterations and quotation marks omitted). The Supreme Court has held that inmates retain due process rights in prison disciplinary proceedings. *See Wolff v. McDonnell*, 418 U.S. 539, 563–72 (1974) (describing the procedural protections that inmates are to receive when subject to significant disciplinary punishment). However, the Supreme Court has clarified that "[p]rison discipline implicates a liberty interest [only] when it 'imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Ortiz*, 380 F.3d at 654 (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)). The Second Circuit has further explained that "[t]he length of disciplinary confinement is one of the guiding factors in applying *Sandin*'s atypical and significant hardship test." *Hanrahan v. Doling*, 331 F.3d 93, 97 (2d Cir. 2003) (citation and quotation marks omitted). The duration of disciplinary confinement, however, is "not the only relevant factor," and the Second Circuit has "explicitly avoided a bright line rule that a certain

24

period of . . . confinement automatically fails to implicate due process rights." *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004) (citations and quotation marks omitted). Indeed, "[t]he conditions of confinement are a distinct and equally important consideration in determining whether a confinement . . . rises to the level of atypical and severe hardship," and, therefore, courts should consider "the extent to which the conditions of the disciplinary segregation differ from other routine prison conditions." *Id.* (citations and quotation marks omitted); *see also Sealey v. Giltner*, 197 F.3d 578, 586 (2d Cir. 1999) ("Both the conditions and their duration must be considered, since especially harsh conditions endured for a brief interval and somewhat harsh conditions endured for a prolonged interval might both be atypical." (citation omitted)).

As a guidepost to determine whether due process protections are required in the prison context, the Second Circuit has instructed that "[w]here the plaintiff was confined for an intermediate duration—between 101 and 305 days—development of a detailed record of the conditions of the confinement relative to ordinary prison conditions is required." *Palmer*, 364 F.3d at 64–65 (citation and quotation marks omitted); *see also Abdur-Raheem v. Caffery*, No. 13-CV-6315, 2015 WL 667528, at *5 (S.D.N.Y. Feb. 17, 2015) (same). Indeed, the Second Circuit has cautioned that "[i]n the absence of a detailed factual record, [it has] affirmed dismissal of due process claims only in cases where the period of time spent in [confinement] was exceedingly short—less than the 30 days that the *Sandin* plaintiff spent in SHU—and there was no indication that the plaintiff endured unusual . . . conditions." *Palmer*, 364 F.3d at 65–66.

Regarding the process an inmate is due, a disciplinary hearing comports with due process when an inmate receives "advance written notice of the charges; a fair and impartial hearing officer; a reasonable opportunity to call witnesses and present documentary evidence; and a written statement of the disposition, including supporting facts and reasons for the action taken."

*Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004) (citation omitted). "In the context of prison disciplinary hearings, the Second Circuit has said that its 'conception of an impartial decisionmaker is one who, inter alia, does not prejudge the evidence and who cannot say, with . . . utter certainty . . . , how he would assess evidence he has not yet seen.'" *Rahman v. Acevedo*, No. 08-CV-4368, 2011 WL 6028212, at *7 (S.D.N.Y. Dec. 5, 2011) (italics omitted) (quoting *Patterson v. Coughlin*, 905 F.2d 564, 570 (2d Cir. 1990)).

"[E]ven if an inmate is segregated for fewer than 101 days, his liberty interest may still be implicated if 'the conditions were more severe than the normal punitive segregation conditions . . . or a more fully developed record showed that even relatively brief confinements under normal punitive segregation conditions were, in fact, atypical.'" *Samuels v. Davis*, No. 14-CV-7204, 2015 WL 4653238, at *2 (S.D.N.Y. July 28, 2015) (alterations omitted) (quoting *Palmer*, 364 F.3d at 65).

Plaintiff alleges that Nurse Salmela, Pollic, Colton, and Snedeker conspired to and did file a false misbehavior report against Plaintiff which stated that Plaintiff spit in Nurse Salmela's face while Nurse Salmela was attempting to treat him, an accusation that Plaintiff denies. (Am. Compl. 12.) Plaintiff alleges that Colton "ordered" Snedeker to write the false misbehavior report, which Snedeker allegedly did. (*Id*.) Plaintiff does not specifically allege how Nurse Salmela or Pollic participated in the manufacturing of the report other than that they were in the room during Colton's alleged command. (*Id*.) To the extent that Plaintiff intended to claim a procedural due process violation against any or all of these Defendants based on the false misbehavior report, it fails. Even if true, such conduct would not violate Plaintiff's due process rights, as an inmate "has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." *Freeman*

*v. Rideout*, 808 F.2d 949, 951 (2d Cir. 1986).  False misbehavior reports may violate an inmate's

rights only when they are filed "in retaliation for exercising a constitutionally protected right" or

when the inmate is "disciplined without adequate due process."  *Willey v. Kirkpatrick*, 801 F.3d

51, 63 (2d Cir. 2015) (citations and quotation marks omitted); *see also Casanova v. Maldonado*,

No. 17-CV-1466, 2019 WL 3286177, at *8 (S.D.N.Y. July 22, 2019) ("[T]he filing of false

disciplinary reports is not a constitutional violation, as long as the plaintiff was provided with all

the due process rights to which he was entitled.").  As discussed below, the Amended Complaint

fails to plausibly allege a procedural due process claim as to the hearing following the

misbehavior report.  Further, Plaintiff does not plausibly allege any facts that suggest that any of

the implicated Defendants filed their allegedly false misbehavior report in retaliation for

Plaintiff's exercise of a constitutional right.  Accordingly, any such claim is dismissed without

prejudice.

Plaintiff further appears to allege that he was denied due process at the disciplinary

hearing pertaining to the allegations that Plaintiff spit in Nurse Salmela's face while Nurse

Salmela was attempting to treat Plaintiff, implicating both Correction Hearing Officer ("CHO")

Levine and Plaintiff's hearing assistant, Gaglioti.  (Am. Compl. 17–18.)  Plaintiff's allegations

fail at the first step of the procedural due process analysis.  Although Plaintiff alleges several

flaws with his hearing and with the quality of assistance he received, (*id*.), Plaintiff does not

allege any facts alleging that the resulting discipline "impose[d] atypical and significant hardship

on the [Plaintiff] in relation to the ordinary incidents of prison life.'"  *Ortiz*, 380 F.3d at 654

(quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (quotation marks omitted)).  Without

allegations to show that a liberty interest was implicated, the Court will not move on to the next

step of the analysis—i.e., whether Plaintiff was given the process he was due before being

subject to any deprivation, including the question of the adequacy of Gaglioti's assistance. *See Kravitz v. Annucci*, No. 16-CV-8999, 2019 WL 1429546, at *8 (S.D.N.Y. Mar. 29, 2019) (dismissing procedural due process claim where the plaintiff "identifies no liberty interest"); *Banks v. County of Westchester*, 168 F. Supp. 3d 682, 692 (S.D.N.Y. 2016) ("Here, however, the [Amended] Complaint neither notes the duration of Plaintiff's [punishment] nor includes any allegations describing conditions that may have rendered [that punishment] an atypical and significant hardship. . . . This due process claim is accordingly dismissed." (citations omitted)).

Therefore, Plaintiff's procedural due process claims pertaining to the disciplinary hearing are dismissed without prejudice.[7]

### 7. Retaliation Claims

"Prisoners have a constitutional right to petition the government, and it is a violation of § 1983 for prison officials to retaliate against prisoners for the exercise of that right." *Bartley v. Collins*, No. 95-CV-10161, 2006 WL 1289256, at *4 (S.D.N.Y. May 10, 2006) (citing *Gayle v. Gonyea*, 313 F.3d 677, 682 (2d Cir. 2002)). To state a First Amendment retaliation claim, Plaintiff must allege "(1) that the speech or conduct at issue was protected, (2) that . . . [D]efendant took adverse action against . . . [P]laintiff, and (3) that there was a causal connection between the protected conduct and the adverse action." *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (citation, alteration, and quotation marks omitted); *see also Washington v. Chaboty*, No. 09-CV-9199, 2015 WL 1439348, at *9 (S.D.N.Y. Mar. 30, 2015) (same). "[B]ecause virtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a

---

[7] A related claim against Prack, the officer who reviewed the result of the disciplinary hearing, was dismissed above on qualified immunity grounds. *See* Section II.B.1.b.

constitutionally proscribed retaliatory act," the Second Circuit has instructed district courts to "approach prisoner retaliation claims with skepticism and particular care." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (citation and quotation marks omitted); *see also Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) ("Retaliation claims by prisoners are prone to abuse since prisoners can claim retaliation for every decision they dislike." (citation and quotation marks omitted)).

Plaintiff did not explicitly plead a retaliation claim but instead referred to the First Amendment in his allegations about Stanaway. (*See* Am. Compl. 19–20.) The Court liberally construes this as a retaliation claim. However, Plaintiff has failed to allege any facts linking Stanaway "causal[ly]" to any "protected" speech of Plaintiff's. *Holland*, 758 F.3d at 225. Plaintiff merely alleges that Stanaway denied his FOIL request and that this violated his First Amendment rights.[8] (*See* Am. Compl. 19–20.)

Accordingly, to the extent Plaintiff intended to allege a retaliation claim against Stanaway, it is dismissed without prejudice.

### 8.  Equal Protection Claims

"The Equal Protection Clause of the Fourteenth Amendment requires that all persons similarly situated be treated in the same manner." *Allen v. Cuomo*, 100 F.3d 253, 260 (2d Cir. 1996) (citing *City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985)). "[T]o assert an equal protection claim, a plaintiff must plead (1) adverse treatment 'compared with

---

[8] The Court also notes that, in general, "[T]here is no violation of a federal constitutional or statutory right from [an] inadequate response to a FOIL request." *Hudson v. County of Dutchess*, 51 F. Supp. 3d 357, 371 (S.D.N.Y. 2014) (citing cases). Any independent FOIL-related claim as to Stanaway is also dismissed.

similarly situated individuals,' and (2) 'that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'" *Marom v. Town of Greenburgh*, No. 13-CV-4733, 2015 WL 783378, at *9 (S.D.N.Y. Feb. 23, 2015) (quoting *Miner v. Clinton County*, 541 F.3d 464, 474 (2d Cir. 2008)). This requires a showing of "discriminatory intent or purpose." *Village of Arlington Heights v. Met. Hous. Dev. Corp.*, 429 U.S. 252, 265 (1977); *see also Phillips v. Girdich*, 408 F.3d 124, 129 (2d Cir. 2005) (holding that a plaintiff must allege "that he was treated differently than others similarly situated as a result of intentional or purposeful discrimination" (citation omitted)); *Giano v. Senkowski*, 54 F.3d 1050, 1057 (2d Cir. 1995) (holding that a plaintiff "must prove purposeful discrimination, directed at an identifiable or suspect class" (citing *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987), and *Kadrmas v. Dickinson Pub. Schs.*, 487 U.S. 450, 457–58 (1988)).

Where there is no allegation of membership in a protected class, the plaintiff may still prevail on either a "class of one" or "selective enforcement" theory. *See Vaher v. Town of Orangetown*, 916 F. Supp. 2d 404, 433 (S.D.N.Y. 2013). A "class-of-one" claim requires the plaintiff allege that he was "[1] intentionally treated differently from others similarly situated and [2] that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (citations omitted). That is, the plaintiff must allege that (i) no rational person could regard the circumstances of the plaintiff to differ from those of a comparator to a degree that would justify the differential treatment on the basis of a legitimate government policy; and (ii) the similarity in circumstances and difference in treatment are sufficient to exclude the possibility that the defendants acted on the basis of a mistake. *Fahs Constr. Grp., Inc. v. Gray*, 725 F.3d 289, 292 (2d Cir. 2013) (citation and quotation marks omitted). A class-

of-one plaintiff must show "an extremely high degree of similarity between [himself] and the persons to whom [he] compare[s] [himself]." *Ruston v. Town Bd. for Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) (citation and quotation marks omitted); *see also Mosdos Chofetz Chaim, Inc. v. Vill. of Wesley Hills*, 815 F. Supp. 2d 679, 696 (S.D.N.Y. 2011) (noting that a class-of-one plaintiff "must identify comparators whom a prudent person would think were roughly equivalent," although he "need not show an exact correlation between [himself] and the comparators").

A "selective enforcement" claim requires the plaintiff show both that "he, compared with others similarly situated, was selectively treated," and that "the selective treatment was motivated by an intention to discriminate on the basis of impermissible considerations, such as race or religion, or to punish or inhibit the exercise of constitutional rights, or by a malicious or bad faith intent to injure the plaintiff." *Vaher*, 916 F. Supp. 2d at 433 (quotation marks and alterations omitted) (quoting *Zahra v. Town of Southold*, 48 F.3d 674, 683 (2d Cir. 1995)). Although "there is some disagreement within the Second Circuit regarding the degree of similarity necessary to adequately allege an equal protection claim under this theory," with "some courts evaluat[ing] whether a comparator is similarly situated under the same standard used in 'class of one' equal protection claims" and other courts "apply[ing] a less demanding standard to selective enforcement claims," *Panzella v. City of Newburgh*, 231 F. Supp. 3d 1, 7 (S.D.N.Y. 2017) (citations omitted) (collecting cases), it is clear that, at a minimum, some showing of comparison with others similarly situated is required.

Plaintiff formulaically refers to the Equal Protection Clause against Stanaway, Prack, Levine, Holland, and Gaglioti. (*See generally* Am. Compl.) However, Plaintiff has not sufficiently alleged that any of the above-named Defendants treated Plaintiff adversely relative to

"similarly situated individuals," much less that any selective treatment was "based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person." *Marom*, 2015 WL 783378, at *9 (citing *Miner*, 541 F.3d at 474). Moreover, Plaintiff also "has not identified any protected class of which he was a member, [and] [e]ven if he had pleaded as much, the assertions in the [Amended C]omplaint concerning [Equal Protection] are speculative and conclusory." *Id.* Accordingly, any Equal Protection claims are dismissed without prejudice.

### 9. State Law Claims

Plaintiff alleges that Colton, Velazquez, and Walker were negligent in transporting Plaintiff from his cell on the stretcher to the facility's emergency room. (Am. Compl. 12.) Plaintiff alleges that Velazquez and Walker did not "look where they were going" and therefore "bang[ed]" Plaintiff's right arm against steel bars. (*Id.*) Plaintiff alleges that Colton was negligent in supervising this transfer. (*Id.*) To the extent Plaintiff alleges state law claims of negligence and medical malpractice against Colton, Velazquez, and Walker, they are barred by New York Correction Law § 24, which provides that "[n]o civil action shall be brought in any court of the state . . . against any officer or employee of [DOCCS] . . . in his or her personal capacity, for damages arising out of any act done or the failure to perform any act within the scope of employment and in the discharge of duties by such officer or employee." N.Y. Correct. Law § 24; *see also Baker v. Coughlin*, 77 F.3d 12, 15 (2d Cir. 1996) (holding that § 24 applies to claims in federal court). Therefore, "[c]ourts in the Second Circuit have long held that [§] 24 precludes a plaintiff from raising state law claims in federal court against state employees in their personal capacities for actions arising within the scope of their employment." *Davis v.*

*McCready*, 283 F. Supp. 3d 108, 123 (S.D.N.Y. 2017). Accordingly, state claims for negligence are all dismissed with prejudice.[9]

### III.  Conclusion

For the foregoing reasons, Moving Defendants' Partial Motion To Dismiss is granted. Dismissal is without prejudice, with the exception of Plaintiff's state law claims, which are dismissed with prejudice.

Plaintiff may file an amended complaint with the Court within 30 days of the date of this Opinion. Plaintiff should include within that amended complaint all changes to correct the deficiencies identified in this Opinion that Plaintiff wishes the Court to consider. Plaintiff is further advised that the amended complaint will completely replace, not supplement, the instant Complaint. The amended complaint must contain all of the claims, defendants, and factual allegations that Plaintiffs wish the Court to consider. If Plaintiff fails to abide by the 30-day deadline, the claims dismissed without prejudice may be dismissed *with* prejudice, and Plaintiff's case will go forward only on the claims that survive this Opinion, namely the claims that Moving Defendants have not moved to dismiss.

The Clerk of Court is respectfully requested to terminate the pending Motion, (Dkt. No. 93), and to mail a copy of this Opinion to Plaintiff.

---

[9] Plaintiff's allegations that Colton, Velazquez, and Walker were negligent would also fail to state an Eighth Amendment claim for use of excessive force for the reasons discussed in Section II.B.3. Mere negligence is insufficient; an excessive force claim requires "wantonness." *Wright*, 554 F.3d at 268 (citation and quotation marks omitted).

SO ORDERED.

DATED:     September 25, 2019
           White Plains, New York

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE